UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COUNCIL ON AMERICAN-ISLAMIC
RELATIONS ACTION NETWORK, INC.,
CAIR FOUNDATION, and
CAIR-MICHIGAN CHAPTER, INC.,

          Plaintiffs,

                                                    Case No. 11-10061
-vs-                                         HON. AVERN COHN

DEBORAH K. SCHLUSSEL,
CAIR MICHIGAN, INC.,
MICHCAIR,
CAIR DETROIT, INC.,
THE LAW OFFICES OF DEBBIE SCHLUSSEL,
WWW.DEBBIESCHLUSSEL.COM, and
OWNERS and OPERATORS of WWW.CAIRMICHIGAN.COM,
WWW.CAIRMICHIGAN.NET, WWW.CAIRDETROIT.COM,
WWW.CAIRDETROIT.ORG, and WWW.CAIRDETROIT.NET,

          Defendants.
_____/

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

### I. INTRODUCTION

This is a trademark infringement case. It involves CAIR trademarks owned by the Council on American-Islamic Relations Action Network, Inc. (CAIR).[1] The three named plaintiffs are: CAIR, a 501(c)(4) corporation; CAIR Foundation, a nonprofit corporation; and CAIR-Michigan Chapter, Inc. (CAIR-MI), a Michigan nonprofit corporation (collectively,

---

[1]The service marks are: the CAIR logo, registration no. 3,484, 022; CAIR COUNCIL ON AMERICAN-ISLAMIC RELATIONS, registration no. 3,243,789; and CAIR, registration no. 3,205,355.  (See Doc. 6).

plaintiffs). Plaintiffs claim that defendant Deborah K. Schlussel (Schlussel) and five entities related to Schlussel[2] (collectively, defendants) are infringing CAIR trademarks by using each without authorization and in a manner that confuses the public, in violation of the Lanham Act, 15 U.S.C. § 1114, et seq. Particularly, plaintiffs claim that defendants are infringing the trademarks by: filing articles of incorporation and certificates of assumed names using the name CAIR; registering domain names using CAIR[3]; posting blogs falsely representing itself as plaintiffs; and falsely misrepresenting itself as plaintiffs to the Attorney General of the State of Michigan.

Now before the Court is defendants' motion to dismiss on the ground that plaintiffs do not have standing or fail to state a claim. For the reasons that follow, defendants' motion will be denied in part and granted in part.

## II. PROCEDURAL BACKGROUND

On January 9, 2011, plaintiffs filed a verified complaint (complaint) for a restraining order against defendants. The complaint was in four counts, claiming trademark infringement under federal and state common law. (Doc. 2).

The Court twice heard oral argument on the complaint: on January 7, 2011, and January 10, 2011. After oral argument, plaintiffs filed supplemental briefs in support of its

---

[2]The additional named defendants are: CAIR, Michigan, Inc.; MICHCAIR, a Michigan nonprofit corporation; CAIR Detroit, Inc., a Michigan nonprofit corporation; The Law Office of Debbie Schlussel; www.debbieschlussel.com; and the owners and operators of , www.cairmichigan.com, www.cairmichigan.net, www.cairdetroit.com, www.cairdetroit.net, and www.cairdetroit.org .

[3]The websites at issue, www.cairmichigan.com, www.cairmichigan.net, www.cairdetroit.com, www.cairdetroit.net, and www.cairdetroit.org, have been modified since plaintiffs filed the verified complaint, and no longer use the CAIR trademark outside of the domain name itself.

motion for a restraining order, (Docs. 6,7), and defendants filed a motion to dismiss. (Doc. 9). On January 27, 2011, the Court stayed plaintiffs' motions pending the decision on defendants' motion. (Doc. 10). On April 13, 2011, the Court again heard oral argument on the matter. During the hearing, the Court allowed plaintiffs fourteen (14) days to file an amended complaint, which was filed on April 27, 2011. (Doc. 16). The amended complaint includes six counts as follows:

> (I) Federal Trademark Infringement and Conspiracy to Commit Federal Trademark Infringement, under the Lanham Act, 15 U.S.C. § 1114(1);
>
> (II) Federal Unfair Competition, False Designation of Origin and Trademark Infringement and Conspiracy to Commit Federal Unfair Competition, false Designation of Origin and Trademark Infringement, under the Lanham Act, § 43, 15 U.S.C. § 1125(a);
>
> (III) Federal Cyberpiracy and Conspiracy to Commit Federal Cyberpiracy Anticybersquatting Consumer Protection Act, under the Lanham Act, § 43, 15 U.S.C. § 1125(d)(1)(A);
>
> (IV) Federal Trademark Dilution and Conspiracy to Commit Federal Trademark Dilution, under the Lanham Act, § 43, 15 U.S.C. § 1125(c);
>
> (V) Trademark Infringement and Unfair Competition and Conspiracy to Commit Trademark Infringement Unfair Competition, under MCL § 429.42 and Michigan Common Law; and
>
> (VI) Alter Ego - Piercing the Corporate Veil.

(Doc. 16).

On May 9, 2011, defendants filed a renewed motion to dismiss, (Doc. 17), to which plaintiffs filed a response, (Doc. 18), and defendants replied, (Doc. 20). The matter is now ready for decision.

### III. STANDARD OF REVIEW

#### A.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. To survive a Rule 12(b)(6) motion, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007); see also Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007). Only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1950 (2009) (internal quotation marks and citation removed). When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Id.

In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Id. at 1949 (internal quotation marks and citation omitted). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." Id. at 1940.

#### B.

Whether a party has standing under Article III of the Constitution "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." MX Group, Inc. v. City of Covington, 293 F.3d 326, 332 (6th Cir.2002) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). In every federal case, standing is a threshold inquiry, which requires the court to determine whether "a plaintiff has alleged such a

personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction to justify exercise of the court's remedial powers on his behalf." Id.

## IV. ANALYSIS

### A. Count I: 15 U.S.C. § 1114(1)

Defendants argue that each individual plaintiff lacks standing under 15 U.S.C. § 1114(1) of the Lanham Act. A trademark infringement claim brought pursuant to 15 U.S.C. § 1114(1) centers on "whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." Autozone, Inc. v. Tandy Corp., 373 F.3d 786, 791-92 (6th Cir. 2004). Particularly, 15 U.S.C. § 1114(1)(a) states:

> Any person who shall, without the consent of the registrant . . . use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant.

15 U.S.C. § 1114(1)(a) (emphasis added); Autozone, supra, at 791-92.

Defendants argue that plaintiffs lack standing as follows: CAIR because it assigned away its right to the trademarks, as stated by plaintiffs in the original complaint; CAIR-MI because it does not have exclusive licensee rights to sue because a written license agreement was not attached to the original complaint; and CAIR Foundation because it is neither a registrant nor an exclusive licensee.

In response, Plaintiffs argue CAIR has standing under 15 U.S.C. § 1114(1) because, contrary to defendants' assertion, a license agreement assigning rights to CAIR-MI does

not exist. Rather, plaintiffs state that when in the original complaint it claimed that "CAIR-MI has been the exclusive licensee and authorized user of CAIR's U.S. registrations in the State of Michigan," (Doc. 2 p. 4), it meant only that CAIR-MI was authorized to exercise the rights, not that a formal license agreement was in effect or that CAIR-MI was an exclusive licensee. Indeed, in the amended complaint, plaintiffs state that "[CAIR] is the owner and registrant of "www.cair.com." (Doc. 16 ¶ 24). The amended complaint clarifies that "[CAIR] has authorized [CAIR Foundation] to use the CAIR Trademarks nationwide." (Id. at ¶ 25). In other words, plaintiffs assert that CAIR remains the sole registrant to the trademarks and thus has standing to sue under 15 U.S.C. § 1114(1). The Court agrees.

Here, plaintiffs deny a formal assignment of the trademark rights. Moreover, a written licensing agreement has not been presented by either party to demonstrate that one exists. Thus, viewing the facts in a light most favorable to plaintiffs, the pleadings do not demonstrate that CAIR formally assigned its trademark rights to CAIR-MI such that CAIR no longer has standing. Accordingly, CAIR remains a registrant of the trademarks and has standing to bring the present claim under 15 U.S.C. § 1114(1)(a).

As to CAIR-MI and CAIR Foundation, plaintiffs do not dispute that both lack jurisdiction under this provision of the Lanham Act. (See Doc. 12, "Plaintiffs CAIR Michigan and CAIR Foundation are neither registrants of federal marks nor assignees of the rights Plaintiff CAIR Action Network possesses in those marks. Thus, neither party has standing under 15 U.S.C. § 1114). Accordingly, neither CAIR-MI nor CAIR Foundation have standing under 15 U.S.C. § 1114(1)(a) because neither is a registrant.

### B. Count II: 15 U.S.C. § 1125(a)

Next, defendants argue that plaintiffs lack standing under 15 U.S.C. § 1125(a)

because plaintiffs do not sufficiently claim a legally cognizable commercial interest. A claim brought pursuant to 15 U.S.C. § 1125(a) imposes liability on:

> Any person who, on or in connection with any goods or services ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-(A) is likely to cause confusion, or to cause mistake, or to deceive ... shall be liable in a civil action by <u>any person who believes that he or she is likely to be damaged by such act</u>.

15 U.S.C. § 1125(a)(1)(A) (emphasis added); AutoZone, supra, at 792.

Ownership of a mark is not required for standing to sue under 15 U.S.C. § 1125(a). Polar Molecular, supra, at *3; McCarthy on Trademarks and Unfair Competition § 27:21. However, a plaintiff must show "some discernable interest in the mark to have standing to sue." Id. (quoting McCarthy: § 27:21) (quotation marks omitted) (holding that plaintiff lacked standing because, among other things, an interest in the mark was not alleged). Particularly, a plaintiff must show "a reasonable interest to be protected in order to have standing to sue." Stanfield, supra, at 873 (citing Dovenmuehle v. Gilldorn Mortgage Midwest Corp., 871 F.2d 697, 700 (7th Cir.1989)). For example, "[t]hose with standing to bring [a false association Lanham Act] claim include parties with a commercial interest in the product wrongfully identified with another's mark, . . . or with a commercial interest in the misused mark." Id. (citing Waits v. Frito-Lay, Inc., 978 F.2d 1093, 1108 (9th Cir.1992), cert. denied, 506 U.S. 1080 (1993)).

In support of the argument that plaintiffs lack a legally cognizable commercial interest, defendants rely on Stanfield v. Osborne Indus., Ind., 52 F.3d 867 (10th Cir. 1995), which states, "[t]hose with standing to bring [a false association Lanham Act] claim include parties with a commercial interest in the product wrongfully identified with another's mark,

7

. . . or with a commercial interest in the misused mark." Id. at 873.

In response, plaintiffs argue that each plaintiff has standing under this provision. Particularly, plaintiffs respond to defendants argument that CAIR Foundation specifically lacks standing by pointing to CAIR Foundation's mission and work statement, which the amended complaint describes as "to enhance the understanding of Islam, encourage dialogue, protect civil liberties, empower American Muslims, and build coalitions that promote justice and mutual understanding." (Doc. 16, p. 3). Further, plaintiffs rely on Polar Molecular Corp. v. Amway Corp., 2007 WL 3473112 (W.D. Mich. Nov. 14, 2007), for the proposition that a plaintiff has standing so long as a discernable interest in the mark is alleged. Id. at *3. Because CAIR, CAIR-MI, and CAIR Foundation have claimed discernable interests, plaintiffs say each has standing. The Court agrees.

Here, in addition to that described above, the amended complaint describes that CAIR, CAIR-MI, and CAIR Foundation "have published guides to Islamic religious practices[,] . . . are seen as to the go-to organization when bias is directed against Muslims . . .],] successfully provide[] an Islamic perspective on issues of importance to the American public by appearing on almost every major media outlet in the United States." (Doc. 16, p. 8). The described acts sufficiently state a discernable interest in the mark. Accordingly, dismissal is not proper on this ground.

As far as defendants' argument that despite a claimed discernable interest plaintiffs still have not claimed a commercial interest, the amended complaint describes the plaintiffs' substantial investment in outreach and educational services related to American Muslim relations. Taken in a light most favorable to plaintiffs, the described activities demonstrate a commercial interest in the form of services to the public so as to withstand dismissal.

Thus, the claim will not be dismissed.

### C. Count III: 15 U.S.C. § 1125(d)(1)(A) - Cybersquatting

Defendants next move for dismissal of plaintiffs' cybersquatting claim. In 1999, Congress passed an amendment to the Lanham Act to prohibit "cybersquatting." DaimlerChrysler v. The Net Inc., 388 F.3d 201, 204 (6th Cir. 2004). "[C]ybersquatting" occurs when a person other than the trademark holder registers the domain name of a well known trademark and then attempts to profit from this by either ransoming the domain name back to the trademark holder or by using the domain name to divert business from the trademark holder to the domain name holder. Id. A trademark owner asserting a cybersquatting claim must establish the following:

> (1) it has a valid trademark entitled to protection;
> (2) its mark is distinctive or famous;
> (3) the defendant's domain name is identical or confusingly similar to, or in the case of famous marks, dilutive of, the owner's mark; and
> (4) the defendant used, registered, or trafficked in the domain name
> (5) with a bad faith intent to profit.

Id. (citing Ford Motor Co. v. Catalanotte, 342 F.3d 543, 546 (6th Cir.2003)).

From what the Court can glean, defendants again argue that plaintiffs lack standing for the same reasons on which they relied for dismissal of the § 1114(1) claim: CAIR because it assigned away its right to the trademarks, as stated by plaintiffs in the original complaint; CAIR-MI because it does not have exclusive licensee rights to sue because a written license agreement was not attached to the original complaint; and CAIR Foundation because it is neither a registrant nor an exclusive licensee. See infra.

In response, plaintiffs argue that the amended complaint satisfies each of the cybersquatting elements. Particularly, plaintiffs assert that defendants' domain names are

identical or confusingly similar to its trademarks thus satisfying the first four elements.[4] As to the remaining element, that defendants used the domain names with a bad faith intent to profit, plaintiffs argue that the following sufficiently establishes intent: Schlussel's blog statements that her purpose in using the marks was to "drive the Muslims crazy," (Doc. 16 ¶ 67); representations made by Schlussel in a letter to the Michigan Attorney General that her entity was the real CAIR organization and that plaintiffs were "imposters"; and links on websites using CAIR domain names to her paypal account where donations could be made to Schlussel, (Doc. 16 ¶ 66).[5]

Similar to plaintiffs' § 1114(1) claim, the Court finds that CAIR has standing to pursue the cybersquatting claim. CAIR is the sole registrant of the mark and thus is the only plaintiff entitled to protection in order to satisfy the first element. As to the remaining elements, including bad faith intent, plaintiffs' amended complaint sets forth a plausible claim of cybersquatting based on the acts described above. Accordingly, CAIR has standing to pursue the claim. On the other hand, CAIR-MI and CAIR Foundation do not have standing, as they are not registrants of the mark and are thus not entitled to protection of the mark in order to meet the first threshold element. Thus, the claim will go forward as to CAIR only.

### D. Count IV: 15 U.S.C. § 1125(c) - Trademark Dilution

Defendants next argue that plaintiffs' trademark dilution should be dismissed.

---

[4] The domain names are as follows: www.cairmichigan.com, www.cairmichigan.net, www.cairdetroit.com, www.cairdetroit.net, and www.cairdetroit.org.

[5] The donation links are no longer present on the websites.

> Pursuant to the Lanham Act,
>
> > the owner of a famous mark that is distinctive, . . . shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1). Dilution by blurring occurs when "the similarity between a mark or trade name and a famous mark . . . impairs the distinctiveness of the famous mark." 15 U.S.C. § 1125(c)(2)(B). Dilution by tarnishment occurs when "the similarity between a mark or trade name and a famous mark . . . harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2) (C). Relating to the similarity requirement, "a high degree of similarity, ranging from 'nearly identical' to 'very similar,' is required for a dilution claim to succeed." AutoZone, Inc. v. Tandy Corp., 373 F.3d 786, 802 (6th Cir.2004) (holding that plaintiff's "dilution claim must fail because the absence of a high degree of similarity between [plaintiffs' mark] and [defendants' mark] underscores plaintiff's failure to provide any evidence of actual dilution).

Here, plaintiffs argue that the amended complaint sets forth a plausible claim of trademark dilution because it describes that the marks at issue are famous and distinctive, and that defendants use has caused confusion amongst the public. The Court disagrees.

Here, while the content of defendants' websites do indeed display the word CAIR, the content is nonetheless different from plaintiffs' trademark in that it displays a Star of David in place of the "A" in CAIR and is captioned with "Council on American-Israel

Relations, Michigan"[6] rather than Council on American-Islamic Relations. Thus, because the plaintiffs have not met the similarity requirement, the trademark dilution claim must be dismissed. See Autozone, supra.

### E. Count V: Common Law Unfair Competition Claims

Next, defendants ask the Court to dismiss plaintiffs' common law unfair competition claim. At common law, ownership of trademark or service mark rights is obtained by actual use. Allard Enterprises, Inc. v. Advanced Programming Resources, Inc., 249 F.3d 564, 571-72 (6th Cir. 2001) (citing J. Thomas McCarthy, 2 McCarthy on Trademarks and Unfair Competition § 16:1 (4th ed.2000)). The first to use a mark in the sale of goods or services is the "senior user" of the mark and gains common law rights to the mark in the geographic area in which the mark is used. Id.

Defendants first argue for dismissal of the claim on the ground that without standing to assert the federal trademarks, the plaintiffs also lack standing to assert the common law claim. In its renewed motion to dismiss, defendants further assert that CAIR-MI lacks standing to assert the claim because it did not renew its annual filings or pay its annual fees with the State of Michigan, causing it to automatically dissolve. Thus, defendants argue that CAIR-MI abandoned its right to the trademark. In support, defendants rely on Micromuse, Inc. V. Micromuse, PLC, 304 F. Supp. 2d 202 (D. Mass. 2004), for the proposition that an abandoned mark cannot be revived where an alleged infringer began

---

[6] At the time that plaintiff filed the case, the websites were much more similar and may have met the "nearly identical" requirement. However, on the eve of the first motion hearing, defendants modified the websites to now display what is described above. Based on the new format of the website, the use is no longer identical at the requisite level to demonstrate dilution.

using the mark during original trademark owner's period of dissolution. See id. at 216-18.

In response, plaintiffs do not dispute that it failed to file annual reports or pay annual filing fees with the State of Michigan, resulting in the "automatic dissolution of its corporate registration in 2003." (Doc. 16, p. 7). However, plaintiffs claim that, "CAIR-MI's operations were continuous and uninterrupted . . . during the period of its corporate dissolution." Id. The amended complaint further explains that, "[u]pon discovery of this administrative oversight . . . CAIR-MI "immediately filed its annual reports for the previous five years and paid annual fees and penalties for all the years for which they were not paid." Id. On August 31, 2010, CAIR-MI's "corporate existence and rights were fully restored . . . as though its dissolution had never happened," pursuant to MCL 450.2925(925)(2). Id. Thus, based on the above, plaintiffs argue that CAIR-MI has standing to pursue the common law claim. The Court agrees.

Here, as stated, plaintiffs' amended complaint states that CAIR-MI's use of the CAIR-MI mark was "continuous and uninterrupted." (Doc. 16, p. 7). Under Micromuse, supra, "[a] mark is deemed abandoned '[w]hen its use has been discontinued with [the] intent not to resume such use.'" Micromuse, supra, at 216 (quoting 15 U.S.C. § 1127) (emphasis added). In other words, the issue of whether plaintiffs failed to file annual reports or pay annual fees is not dispositive on the issue of abandonment. Moreover, plaintiffs' amended complaint sufficiently states facts that support its continued use of the mark despite the claimed administrative oversights. Thus, CAIR-MI has standing to go forward with the common law infringement claim. See also E. Gluck Corp. V. Rothenhaus, 585 F. Supp. 2d 505, 512 (S.D. N.Y. 2008) (affirmative defense of abandonment not properly resolved on a motion to dismiss because of its fact-intensive nature).

Further, defendants' argument that CAIR-MI lacks standing to assert the claim because it lacks standing on the federal claims lacks merit. Because all federal claims have not been dismissed, the Court will not decline jurisdiction on the common law claim.

### F. Count VI: Alter Ego - Piercing the Corporate Veil

Finally, defendants' move for dismissal of plaintiffs' alter ego claim on the ground that it "is not an independent cause of action and, as such, cannot save [p]laintiffs' [a]mended [c]omplaint from dismissal without the Court finding one of Counts I-V have survived." (Doc. 17, p. 13). Defendants' argument assumes a finding in its favor as to the previous claims. Because not all claims have been dismissed, the Court will not dismiss the alter ego claim on this narrow ground.

### V. CONCLUSION

Accordingly, defendants' motion to dismiss is resolved as follows:

- Count I: DENIED as to CAIR only, and GRANTED as to CAIR-MI and CAIR Foundation;

- Count II: DENIED as to all defendants;

- Count III: DENIED as to CAIR only, and GRANTED as to CAIR-MI and CAIR Foundation;

- Count IV: GRANTED as to all defendants;

- Count V: DENIED as to CAIR-MI, and GRANTED as to CAIR and CAIR Foundation;

- Count VI: DENIED as to all defendants.

**11-10061
CAIR v. Schlussel, et al
Decision & Order Granting in Part and Denying in Part Defendants' Motion to Dismiss**

The case manager will schedule a status conference with the parties to chart the future of the case.

SO ORDERED.

                                   S/Avern Cohn
                                   AVERN COHN
                                   UNITED STATES DISTRICT JUDGE

Dated:  August 11, 2011

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, August 11, 2011, by electronic and/or ordinary mail.

                                   S/Julie Owens
                                   Case Manager, (313) 234-5160